## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RHODE ISLAND LABORERS' PENSION FUND, Individually and On Behalf of All Others Similarly Situated, | Civil Action No.: 1:19-cv-05990-RA |
| Plaintiff, | |
| v. | CLASS ACTION |
| FEDEX CORPORATION, et al., | |
| Defendants. | |
| SELWYN KARP, Individually and On Behalf of All Others Similarly Situated, | Civil Action No.: 1:19-cv-06183-RA |
| Plaintiff, | |
| v. | CLASS ACTION |
| FEDEX CORPORATION, et al., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF ELMER WHITE
FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF
AND APPROVAL OF SELECTION OF LEAD COUNSEL**

**TABLE OF CONTENTS**

MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF ELMER WHITE ................. i

PRELIMINARY STATEMENT ............................................................................... 1

FACTUAL BACKGROUND.................................................................................. 2

ARGUMENT...................................................................................................... 4

   **I.**    **THE RELATED ACTIONS SHOULD BE CONSOLIDATED**................................. 4

   II.   THE COURT SHOULD APPOINT MOVANT AS LEAD PLAINTIFF......................... 5

      A.   The PSLRA's Provisions Concerning the Appointment of Lead Plaintiff..................... 5

      B.   Movant Satisfies the Lead Plaintiff Provisions of the PSLRA ....................................... 6

         1.   Movant Filed a Timely Motion................................................................. 7

         2.   Movant Has the Largest Financial Interest in the Relief Sought By the Class......... 7

         3.   Movant Meets Rule 23's Typicality and Adequacy Requirements .......................... 8

            (i)   Movant's Claims Are Typical of the Claims of the Class .................................. 9

            (ii)   Movant Will Fairly and Adequately Protect the Interests of the Class ............... 10

  III.  MOVANT'S CHOICE OF COUNSEL SHOULD BE APPROVED............................. 12

CONCLUSION.................................................................................................. 12

## TABLE OF AUTHORITIES

**Cases**

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
  252 F.R.D. 188 (S.D.N.Y. 2008) ...................................................................................... 10

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005) ....................................................................................................... 9

*Foley v. Transocean Ltd.*,
  272 F.R.D. 126 (S.D.N.Y. 2011) ................................................................................. 6, 8

*Gen. Tel. Co. of the Southwest v. Falcon*,
  457 U.S. 147 (1982) ...................................................................................................... 11

*In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*,
  2008 U.S. Dist. LEXIS 106327 (S.D.N.Y. Dec. 29, 2008) ...................................... 10

*In re Drexel Burnham Lambert Grp., Inc.*,
  960 F.2d 285 (2d Cir. 1992)........................................................................................ 10

*In re eSpeed, Inc., Sec. Litig.*,
  232 F.R.D. 95 (S.D.N.Y. 2005) ..................................................................................... 1

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  288 F.R.D. 26 (S.D.N.Y. 2012) ..................................................................................... 7

*In re GE Secs. Litig.*,
  No. 09-Civ.-1951 (DC), 2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29, 2009)................. 12

*In re Milestone Scientific Sec. Litig.*,
  183 F.R.D. 404 (D.N.J. 1998)...................................................................................... 12

*In re Orion Sec. Litig.*,
  No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368 (S.D.N.Y. July 8, 2008) ................... 10

*In re Oxford Health Plans, Inc. Sec. Litig*,
  182 F.R.D. 42 (S.D.N.Y.) ............................................................................................ 10

*Johnson v. Celotex Corp.*,
  899 F.2d 1281 (2d Cir. 1990)......................................................................................... 5

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) ..................................................................................... 8

*Khunt v. Alibaba Grp. Holding Ltd.*,
  102 F. Supp. 3d 523 (S.D.N.Y. 2015)............................................................................ 9

*Mitchell v. Complete Mgmt., Inc.,*
  No. 99-cv-1454, 1999 U.S. Dist. LEXIS 14460 (S.D.N.Y. Sept. 17, 1999) .............................. 5

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.,*
  275 F.R.D. 187 (S.D.N.Y. 2011) ..................................................................... 12

*Primavera Familienstifung v. Askin,*
  173 F.R.D. 115 (S.D.N.Y. 1997) ..................................................................... 5

*Reimer v. Ambac Fin. Group, Inc.,*
  No. 0-Civ.-411 (NRB), 2008 U.S. Dist. LEXIS 38729 (S.D.N.Y. May 9, 2008) .................... 11

*Richman v Goldman Sachs Grp,*
  274 F.R.D. 473 (S.D.N.Y. 2011) ..................................................................... 11

*Strougo v. Brantley Capital Corp.,*
  243 F.R.D. 100 (S.D.N.Y. 2007) ..................................................................... 10

*Takeda v. Turbodyne Techs., Inc.,*
  67 F. Supp. 2d 1129 (C.D. Cal. 1999) ................................................................ 5

*Vanamringe v. Royal Grp. Techs., Ltd.,*
  237 F.R.D. 55 (S.D.N.Y. 2006) ...................................................................... 12

*Weiss v. Friedman, Billings, Ramsey Group, Inc.,*
  05-cv-4617 (RJH), 2006 U.S. Dist. LEXIS 3028 (S.D.N.Y. Jan. 24, 2006) ......................... 8

*Weisz v. Calpine Corp.,*
  No. 02-cv-1200, 2002 U.S. Dist. LEXIS 27831 (N.D. Cal. Aug. 19, 2002) ......................... 5

*Weltz v. Lee,*
  199 F.R.D. 129 (S.D.N.Y. 2001) ................................................................... 4, 8

**Statutes**

15 U.S.C. § 78j(b) .................................................................................... 1

15 U.S.C. § 78t(a) .................................................................................... 1

15 U.S.C. § 78u-4(a)(3)(A) ........................................................................ 6, 7

15 U.S.C. § 78u-4(a)(3)(A)(i) ...................................................................... 7

15 U.S.C. § 78u-4(a)(3)(B) .................................................................... passim

15 U.S.C. § 78u-4(a)(3)(B)(i) ...................................................................... 6

15 U.S.C. § 78u-4(a)(3)(B)(iii) .................................................................. 8, 9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ............................................................................. 6, 13

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ............................................................................. 9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ......................................................................... 13

15 U.S.C. § 78u-4(a)(3)(B)(v) ...................................................................................... 13

15 U.S.C. § 78u-4(e) ....................................................................................................... 8

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................... passim

Fed. R. Civ. P. 42(a) ................................................................................................... 4, 5

Movant Elmer White ("Movant" or "White"), on behalf of himself and all similarly situated entities and persons, respectfully submits this Memorandum of Law in support of his motion ("Motion") to: (1) consolidate the above-captioned actions; (2) appoint Movant as Lead Plaintiff on behalf of all persons or entities who purchased or otherwise acquired the securities of FedEx Corporation ("FedEx" or the "Company") from September 19, 2017 through December 18, 2018, both dates inclusive; (3) approve Movant's selection of the law firms of Thornton Law Firm LLP as Lead Counsel and Bernstein Liebhard LLP as Liaison Counsel for the putative class; and (4) grant such other and further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

Presently pending before the Court are two related class actions (the "Related Actions") brought on behalf of all persons who purchased or otherwise acquired the securities of FedEx (collectively, the "Class") between September 19, 2017 through December 18, 2018, both dates inclusive (the "Class Period"). Plaintiffs in the Related Actions allege violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5.

The Private Securities Litigation Reform Act of 1995, as amended, 15 U.S.C. §78u-4(a)(3)(B) (the "PSLRA"), provides for the Court to appoint as lead plaintiff the movant that has the largest financial interest in the litigation that has also made a *prima facie* showing that he, she, or it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. *See In re eSpeed, Inc., Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005) ("At the lead plaintiff stage of the litigation, the party moving for lead plaintiff of the consolidated action need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23.") (quotations omitted). Movant has lost over $17,598 as a result of the alleged fraud during the Class

Period.[1] Accordingly, Movant believes it has the largest financial interest in the outcome of this litigation. Moreover, Movant satisfies the requirements of Rule 23 in that its claims are typical of the claims of the Class, and it will fairly and adequately represent the interests of the Class.[2]

For the reasons summarized herein and discussed more fully below, Movant's Motion should be granted in its entirety.

## FACTUAL BACKGROUND

FedEx is a global logistics company that ships goods to commercial and residential customers throughout the world. ¶2.[3] Traditionally, FedEx has generated a substantial majority of its revenues in the United States. In July 2016, FedEx significantly expanded its international operations through its $4.8 billion acquisition of TNT Express N.V. ("TNT"), a Netherlands-based logistics company with operations concentrated in Europe. ¶3.

On June 27, 2017, TNT's operations were crippled by a cyberattack known as NotPetya, which involved the spread of a malware virus throughout TNT's systems (the "Cyberattack"). The timing of the attack was particularly problematic for FedEx, as TNT's systems were paralyzed during the critical period involving the integration of TNT with the Company's legacy European operations. ¶5.

Throughout the Class Period, Defendants continually assured investors about its recovery from the Cyberattack and that any negative impact from the attack was minimal. For example, Defendants told investors that TNT customer volumes were being restored to pre-attack levels and

---

[1] Certifications identifying Movant's transactions in FedEx, as required by the PSLRA, as well as a chart identifying its losses, are attached to the Declaration of Guillaume Buell ("Buell Decl."), as Exhibits A and C, respectively.

[2] The "Class" is comprised of all persons, other than defendants, who purchased or otherwise acquired FedEx securities during the Class Period.

[3] References to ¶__ are to paragraphs of the Complaint, Dkt. No. 1.

that "despite the cyberattack, the customers stuck with us." Defendants also stated that TNT integration efforts were successfully progressing and continuously stated that FedEx was "on track" to achieve TNT synergy targets. ¶7.

Notwithstanding these positive representations to the market, Defendants made false and misleading statements or failed to disclose that: (1) TNT's overall package volume growth was slowing as TNT's large customers permanently took their business to competitors after the Cyberattack; (2) as a result of the customer attrition, TNT was experiencing an increased shift in product mix from higher-margin parcel services to lower-margin freight services; (3) the anticipated costs and timeframe to integrate and restore the TNT network were significantly larger and longer than disclosed; (4) FedEx was not on track to achieve TNT synergy targets; and (5) as a result of these undisclosed negative trends and cost issues, FedEx's positive statements about TNT's recovery from the Cyberattack, integration into FedEx's legacy operations, customer mix, customer service levels, profitability, and prospects lacked a reasonable basis. ¶8.

The truth about TNT's deteriorating business was revealed through a series of disclosures culminating on December 18, 2018. On that date, FedEx reported a large profit miss for its second fiscal quarter ended November 30, 2018. Defendants attributed the disappointing results to lower package volumes in Europe and a negative shift in TNT's product mix to lower margin freight business following the Cyberattack—which had occurred well over a year ago. The Company also lowered its fiscal 2019 earnings guidance and announced its main TNT synergy target would no longer be achievable by fiscal year 2020. On this news, FedEx stock dropped $22.50 per share, or 12.2 percent, to close at $162.51 per share on December 19, 2018. ¶13.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of FedEx securities, members of the Class have suffered significant losses and damages.

**ARGUMENT**

## I.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this [sub-]chapter has been filed," the Court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Thereafter, the Court "shall appoint the most adequate plaintiff for the consolidated actions." *Id.*

Under Rule 42(a) of the Federal Rules of Civil Procedure, consolidation is appropriate when the actions involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a); *Weltz* v. *Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) ("[C]ourts have taken the view that considerations of judicial economy favor consolidation." (quoting *Johnson* v. *Celotex Corp.,* 899 F.2d 1281, 1284-85 (2d Cir. 1990)); *see also Takeda* v. *Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1132-33 (C.D. Cal. 1999).

Consolidation is particularly appropriate in securities class action litigation such as this. *See Mitchell* v. *Complete Mgmt., Inc.*, No. 99-cv-1454, 1999 U.S. Dist. LEXIS 14460, at *4 (S.D.N.Y. Sept. 17, 1999) ("In securities actions where the complaints are based on the same 'public statements and reports' consolidation is appropriate if there are common questions of law and fact . . . .") (citation omitted); *Primavera Familienstifung* v. *Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997) (same). Courts, therefore, routinely find that consolidating multiple securities cases is an efficient solution where the complaints arise generally from the same alleged false and

4

misleading statements. *See, e.g.*, *Weisz* v. *Calpine Corp.*, No. 02-cv-1200, 2002 U.S. Dist. LEXIS 27831, at \*7-8 (N.D. Cal. Aug. 19, 2002); *Takeda*, 67 F. Supp. 2d at 1132-33 (consolidation appropriate in securities class actions).

The Related Actions pending before this Court present similar factual and legal issues, as they both involve the same subject matter and are based on the same wrongful course of conduct. Each names FedEx and certain of its officers or directors as defendants. Because the Related Actions arise from the same facts and circumstances and involve the same subject matter, the same discovery and similar class certification issues will be relevant to all Related Actions. Accordingly, consolidation under Rule 42(a) is appropriate. *See Celotex Corp.*, 899 F.2d at 1285.

## II.    THE COURT SHOULD APPOINT MOVANT AS LEAD PLAINTIFF

### A.  The PSLRA's Provisions Concerning the Appointment of Lead Plaintiff

The PSLRA mandates that the Court decide the lead plaintiff issue "[a]s soon as practicable." 15 U.S.C. §78u-4(a)(3)(B)(ii). The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a) and (a)(3)(B).

*First,* the PSLRA provides that within 20 days after the date on which the first class action is filed, the plaintiff to that action shall cause to be published in a widely circulated national business publication or wire service, a notice advising members of the proposed class of the pendency of the action and their right to move for appointment as lead plaintiff within 60 days of the notice publication. *See Foley* v. *Transocean Ltd.*, 272 F.R.D. 126, 127 (S.D.N.Y. 2011) (citing 15 U.S.C. §78u-4(a)(3)(A)).

Under 15 U.S.C. §78u-4(a)(3)(B)(i), the Court will, no later than 90 days after the date on which a notice is published, consider any motion filed by a purported class member in response to the notice and appoint as lead plaintiff the movant that the court determines to be "most capable of adequately representing the interests of class members." The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

(aa)    has either filed the complaint or made a motion in response to a notice;

(bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a Class member that the presumptive most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

As set forth below, Movant has complied with the procedural prerequisites of the PSLRA and possesses, to the best of its knowledge, the largest financial interest in the litigation of any other Class member(s) seeking appointment as lead plaintiff. Movant is also unaware of any unique defenses that Defendants could raise against it. Therefore, Movant is entitled to the presumption that it is the most adequate plaintiff to represent the Class and, as a result, should be appointed lead plaintiff in the Action.

### B. Movant Satisfies the Lead Plaintiff Provisions of the PSLRA

As described in further detail below, Movant should be appointed lead plaintiff because it satisfies all of the requirements of the PSLRA. Movant filed a timely motion to be appointed lead

plaintiff, holds the largest financial interest in the relief sought by the Class and satisfies the typicality and adequacy requirements of Rule 23.

### 1. Movant Filed a Timely Motion

On June 26, 2019, which was within twenty (20) days of the filing of the first-filed complaint as required by 15 U.S.C. §78u-4(a)(3)(A)(i), plaintiff in the first-filed Action published notice through *GlobeNewsWire*, a widely circulated national business-oriented wire service. *See* Buell Decl., Ex. D. Consequently, any member of the proposed Class was required to seek appointment as lead plaintiff within 60 days after publication of that notice. *See* 15 U.S.C. §78u-4(a)(3)(A)(i). Therefore, the time period in which class members may move to be appointed lead plaintiff herein under 15 U.S.C. §78u-4(a)(3)(A) and (B) expires on August 26, 2019. Pursuant to the PSLRA and within the requisite time frame after publication of the required notice, Movant herein timely moves this Court to be appointed lead plaintiff on behalf of all members of the Class.

### 2. Movant Has the Largest Financial Interest in the Relief Sought By the Class

According to 15 U.S.C. §78u-4(a)(3)(B)(iii), the Court shall appoint as lead plaintiff the movant with the largest financial loss in the relief sought by the action. As demonstrated herein, Movant has the largest known financial interest in the relief sought by the Class. *See* Buell Decl., Ex. C. The movant who has the largest financial interest in this litigation and meets the adequacy and typicality requirements of Rule 23 is presumptively the lead plaintiff. *See Weltz* v. *Lee*, 199 F.R.D. 129, 132 (S.D.N.Y. 2001); *Foley*, 272 F.R.D. 126, 128 (stating "[a]lthough courts have differed on how much weight to assign to each of the factors, the Second Circuit, as have other courts, shall place the most emphasis on the last of the four factors: the approximate loss suffered by the movant."). *See also Kaplan* v. *Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007) (same); *Weiss* v. *Friedman, Billings, Ramsey Group, Inc.*, 2006 U.S. Dist. LEXIS 3028, *13-14 (S.D.N.Y. Jan.

24, 2006) ("We believe that the best yardstick by which to judge 'largest financial interest' is the amount of loss, period").

Under the PSLRA, damages are calculated based on (i) the difference between the purchase price paid for the shares and the average trading price of the shares during the 90-day period beginning on the date the information correcting the misstatement was disseminated, or (ii) the difference between the purchase price paid for the shares and the average trading price of the shares between the date when the misstatement was corrected and the date on which the plaintiff sold their shares, if they sold their shares before the end of the 90-day period. 15 U.S.C. §78u-4(e).

Within the Class Period, Movant purchased FedEx securities in reliance upon the materially false and misleading statements issued by Defendants, and was injured thereby. Movant suffered substantial losses of over $17,000 as a result of the Defendants' alleged fraudulent statements. *See* Buell Decl., Ex. C (Loss Chart). Movant thus has a significant financial interest in the outcome of this case. To the best of its knowledge, there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest and also satisfy Rule 23.

### 3. Movant Meets Rule 23's Typicality and Adequacy Requirements

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(iii), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a class may be certified only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative

party will fairly and adequately protect the interests of the class. Of these four prerequisites, only two—typicality and adequacy—directly address the personal characteristics of the lead plaintiff movant. Consequently, in deciding a lead plaintiff motion, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until a class certification motion is filed. *See In re Oxford Health Plans, Inc. Sec. Litig*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA."). *See also Strougo v. Brantley Capital Corp.,* 243 F.R.D. 100, 105 (S.D.N.Y. 2007); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.,* 252 F.R.D. 188, 191 (S.D.N.Y. 2008) ("At this stage of the litigation, the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.").

As detailed below, and in Movant's Declaration (*see* Buell Decl. Ex. C), Movant satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as lead plaintiff.

### (i)   Movant's Claims Are Typical of the Claims of the Class

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. A plaintiff satisfies the typicality requirement if the plaintiff has: (a) suffered the same injuries as the absent class members; (b) the injuries are as a result of the same course of conduct by defendants; and (c) the plaintiff's claims are based on the same legal issues that prove the defendant's liability. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). *See also In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*, 2008 U.S. Dist. LEXIS 106327, at *29 (S.D.N.Y. Dec. 29, 2008) ("However, the claims of the class representative need not be identical to those of all members of the class." *Id.*; *In re Orion Sec. Litig.*, 2008 U.S. Dist.

LEXIS 55368, at *12 (S.D.N.Y. July 8, 2008) ("Indeed, the possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact.") (quotations omitted).[4]

In this case, the typicality requirement is met because Movant's claims are identical to, and neither compete, nor conflict, with the claims of the other Class members. *See Richman* v. *Goldman Sachs Grp*, 274 F.R.D. 473, 479 (S.D.N.Y. 2011) ("The typicality requirement is satisfied when the claims of the proposed lead plaintiff arise from the same conduct from which the other class members' claims and injuries arise.") (quotations omitted). Movant, like the other members of the Class, acquired Adient securities during the Class Period at prices artificially inflated by the Defendants' materially false and misleading statements, and was damaged thereby. Thus, the claims of Movant are typical, if not identical, to those of the other members of the Class because Movant suffered losses similar to those of other Class members and its losses resulted from the Defendants' common course of wrongful conduct. Accordingly, Movant satisfies the typicality requirement of Rule 23(a)(3). *See Reimer* v. *Ambac Fin. Group, Inc.,* 2008 U.S. Dist. LEXIS 38729, *12 (S.D.N.Y. May 9, 2008) ("Typicality is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.").

   **(ii)**   **Movant Will Fairly and Adequately Protect the Interests of the Class**

Movant is also an adequate representative for the Class. Under Rule 23(a)(4), representative parties must also "fairly and adequately protect the interests of the class." Adequate

---

[4] Further, though irrelevant to the instant motion, a finding of typicality frequently supports a finding of commonality and *vice versa*. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (noting that the typicality and commonality requirements tend to merge).

representation will be found if the representative has: (a) retained able and experienced counsel; and (b) the representative has no fundamental conflicts of interest with the interests of the class as a whole. *See Pipefitters Local No. 636 Defined Benefit Plan* v. *Bank of Am. Corp.*, 275 F.R.D. 187, 190 (S.D.N.Y. 2011) ("In considering the adequacy of a proposed lead plaintiff, a court must consider: (1) whether the lead plaintiff's claims conflict with those of the class; and (2) whether class counsel is qualified, experienced, and generally able to conduct the litigation."); *In re GE Secs. Litig.*, 2009 U.S. Dist. LEXIS 69133, at *15 (S.D.N.Y. July 29, 2009) (Movant "satisfies the adequacy requirement because its interests are aligned with those of the putative class, and it has retained competent and experienced counsel."). The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class. 15 U.S.C. §78u-4(a)(3)(B).

Movant has met both of the requirements under Rule 23(a)(4) to fairly and adequately protect the interests of the putative class. *See* Buell Decl. Exs. A, B. Moreover, Movant has retained counsel who, as shown below, are experienced in litigating lawsuits such as the Related Actions and Movant will submit its choice of Lead Counsel and Liaison Counsel to the Court for approval. Therefore, Movant is an adequate representative for the Class.

Accordingly, at this stage of the proceedings, Movant has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfies 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). In addition, because Movant has sustained the largest amount of losses from Defendants' alleged wrongdoing, it is the presumptive lead plaintiff in accordance with §78u-4(a)(3)(B)(iii)(I) and should be appointed as such to lead this Action.

11

### III.    MOVANT'S CHOICE OF COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with the lead plaintiff's selection only when necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa). Here, Movant has selected and retained Thornton Law Firm LLP and Bernstein Liebhard LLP as the proposed Lead Counsel and Liaison Counsel for the Class.

As set forth in the accompanying firm résumés (Buell Decl. Ex. E), the firms are highly accomplished firms who have recovered many multi-million dollar recoveries for investors. As a result, the firms have the requisite experience in successfully prosecuting complex securities class actions such as these, and are well-qualified to represent the Class. Thus, this Court may be assured that in the event that the instant Motion is granted, the members of the Class will receive the highest caliber of legal representation.

### CONCLUSION

For all the foregoing reasons, Movant respectfully requests that the Court: (1) consolidate the Related Actions; (2) appoint White as Lead Plaintiff on behalf the Class; (3) approve White's selection of counsel, Thornton Law Firm and Bernstein Liebhard LLP, as Lead Counsel and Liaison Counsel; and (4) grant such other and further relief as the Court may deem just and proper.

DATED: AUGUST 26, 2019                    Respectfully Submitted,

                                          **THORNTON LAW FIRM LLP**

                                           /s/ *Guillaume Buell*
                                          GUILLAUME BUELL (SDNY: GB0810)
                                          1 Lincoln Street
                                          Boston, MA 02111
                                          Telephone: (617) 720-1333
                                          Facsimile: (617) 720-2445
                                          gbuell@tenlaw.com

12

*Counsel for Movant and Proposed Lead Counsel*

**BERNSTEIN LIEBHARD LLP**
STANLEY D. BERNSTEIN
MICHAEL S. BIGIN
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218
bernstein@bernlieb.com
bigin@bernlieb.com

*Counsel for Movant and Proposed Liaison Counsel*
*for the Class*

13

## **CERTIFICATE OF SERVICE**

I, Guillaume Buell, hereby certify that this document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this 26th day of August, 2019.

*/s/ Guillaume Buell*
Guillaume Buell