UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RHODE ISLAND LABORERS' PENSION FUND, Individually and on Behalf of All Others Similarly Situated, | Case No.  1:19-cv-05990-RA |
| Plaintiff, | |
| vs. | |
| FEDEX CORPORATION, FREDERICK W. SMITH, ALAN B. GRAF, JR., DAVID J. BRONCZEK, RAJESH SUBRAMANIAM, DAVID L. CUNNINGHAM, DONALD F. COLLERAN, and MICHAEL C. LENZ, | |
| Defendants. | |
| SELWYN KARP, Individually and on Behalf of All Others Similarly Situated, | Case No.  1:19-cv-06183-RA |
| Plaintiff, | |
| vs. | |
| FEDEX CORPORATION, FREDERICK W. SMITH, ALAN B. GRAF, JR., DAVID J. BRONCZEK, RAJESH SUBRAMANIAM, DAVID L. CUNNINGHAM, DONALD F. COLLERAN, and MICHAEL C. LENZ, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF LOCALS 40, 361 & 417 UNION SECURITY FUNDS FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS....................................................................................................3

ARGUMENT.......................................................................................................................7

I.     THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES ..7

II.    IRONWORKERS SHOULD BE APPOINTED LEAD PLAINTIFF................................8

    A.    Ironworkers is willing to serve as a Class Representative and has timely filed this motion to be appointed Lead Plaintiff....................................................................9

    B.    Ironworkers has the "largest financial interest" in the Related Actions. ..............10

    C.    Ironworkers otherwise satisfies the Requirements of Rule 23. ...........................11

III.   LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED..........14

CONCLUSION....................................................................................................................15

## **TABLE OF AUTHORITIES**

**Page(s)**

<u>Cases</u>

*Aude v. Kobe Steel, Ltd.*, 17-CV-10085,
  2018 U.S. Dist. LEXIS 57591 (S.D.N.Y. Apr. 4, 2018) .......................................................11

*Bassin v. Decode Genetics, Inc.*,
  230 F.R.D. 313 (S.D.N.Y. 2005) ...........................................................................................8

*Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*,
  141 F.R.D. 229 (2d Cir. 1992) .............................................................................................12

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
  252 F.R.D. 188 (S.D.N.Y. 2008) ............................................................................................7

*Chahal v. Credit Suisse Grp. AG*, 18-CV-2268 *et al.*,
  2018 U.S. Dist. LEXIS 104185 (S.D.N.Y. June 21, 2018) ...................................................10

*Dookeran v. Xunlei Ltd.*, 18-cv-467 (RJS) *et al.*,
  2018 U.S. Dist. LEXIS 62575 (S.D.N.Y. Apr. 12, 2018) .....................................................13

*Foley v. Transocean Ltd.*,
  272 F.R.D. 126 (S.D.N.Y. 2011) ..........................................................................................13

*Glauser v. EVCI Career Colleges Holding Corp.*,
  236 F.R.D. 184 (S.D.N.Y. 2006) .......................................................................................2, 13

*In re Braskem S.A. Sec. Litig.*, 15 Civ. 5132 (PAE) *et al.*,
  2015 U.S. Dist. LEXIS 119183 (S.D.N.Y. Sept. 8, 2015) ....................................................14

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) .................................................................................................10

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER),
  2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007)................................................. 10, 14

*In re Doral Fin. Corp. Sec. Litig.*,
  414 F. Supp. 2d 398 (S.D.N.Y. 2006) ...................................................................................14

*In re Drexel Burnham Lambert Grp., Inc.*,
  960 F.2d 285 .........................................................................................................................12

*In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC),
  2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29, 2009)....................................................7, 8

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998)..................................................................................10

*In re Orion Secs. Litig.*, 08 Civ. 1328 (RJS),
   2008 U.S. Dist. LEXIS 55368 (S.D.N.Y. July 7, 2008).......................................................12

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998) .......................................................................................11

*In re Tronox, Inc. Sec. Litig.*,
   262 F.R.D. 338 (S.D.N.Y. 2009) .......................................................................................7

*In re Veeco Instruments, Inc.*,
   233 F.R.D. 330 (S.D.N.Y. 2005) ..................................................................................2, 13

*Janbay v. Canadian Solar, Inc.*,
   272 F.R.D. 113 (S.D.N.Y. 2010) .....................................................................................12

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir. 1990)............................................................................................7

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007) .......................................................................................11

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
   311 F.R.D. 373 (S.D.N.Y. 2015) .....................................................................................14

*Karp v. FedEx Corporation et al.*,
   No. 1:19-cv-06183-RA, Dkt. No. 1.....................................................................................1

*Lax v. First Merchants Acceptance Corp.*, Nos. 97 C 2715 *et al.*,
   1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) .......................................................10

*Malcolm v. Nat'l Gypsum Co.*,
   995 F.2d 346 (2d Cir. 1993) .............................................................................................7

*Micholle v. Ophthotech Corp.*, 17-CV-210 (VSB) *et al.*,
   2018 U.S. Dist. LEXIS 41120 (S.D.N.Y. Mar. 13, 2018)................................................2, 13

*Nurlybaev v. ZTO Express (Cayman) Inc.*, 17-CV-06130 (LTS)(SN),
   2017 U.S. Dist. LEXIS 187238 (S.D.N.Y. Nov. 13, 2017)..................................................10

*Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) .....................................................................................10

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
   589 F. Supp. 2d 388 (S.D.N.Y. 2008)..............................................................................14

## **Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)..................................................................................*passim*

## **Rules**

Fed. R. Civ. P. 23.............................................................................................................*passim*

Fed. R. Civ. P. 42...................................................................................................................7

Ironworkers Locals 40, 361 & 417 Union Security Funds ("Ironworkers") respectfully submits this Memorandum of Law in support of its motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order: (1) consolidating the above-captioned related actions ("Related Actions"); (2) appointing Ironworkers as Lead Plaintiff on behalf of all those who purchased, or otherwise acquired, FedEx Corporation ("FedEx" or the "Company") securities between September 19, 2017 and December 18, 2018, both dates inclusive (the "Class Period"); and (3) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## PRELIMINARY STATEMENT

It is critically important that a sophisticated institutional investor oversees the litigation of this Action by experienced legal counsel. The complaints in the Related Actions allege that FedEx and certain of its officers defrauded investors in violation of the Exchange Act. *See generally Rhode Island Laborers' Pension Fund v. FedEx Corporation et al.*, No. 1:19-cv-05990-RA, Dkt. No. 1; *Karp v. FedEx Corporation et al.*, No. 1:19-cv-06183-RA, Dkt. No. 1 (collectively, the "Complaints"). FedEx investors, including Ironworkers, incurred significant losses following the disclosure of the alleged fraud, which caused the prices of FedEx securities to fall sharply, damaging Ironworkers and other FedEx investors. The ability of FedEx investors to recover their losses arising from the alleged fraud rests up on the Court's appointment of the most qualified Lead Plaintiff and Lead Counsel pursuant to the procedure set forth in the PSLRA. Iron Workers is the best choice to serve as Lead Plaintiff. Its chosen counsel, Pomerantz, will devote the resources and expertise necessary to zealously prosecute this litigation, is thus the best candidate to serve as Lead Counsel.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the action and that satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).   Iron Workers, a sophisticated institutional investors that incurred losses of approximately *$406,714* calculated on a first-in, first-out ("FIFO") basis and *$331,707* calculated on a last-in, first-out ("LIFO") basis in connection with its Class Period purchases of FedEx securities, believes that it has the largest financial interest in the relief sought in this action.  *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Ex. A.

Beyond its considerable financial interest, Iron Workers also meets the applicable requirements of Rule 23 because its claims are typical of absent class members and it will fairly and adequately represent the interests of the Class.  As a sophisticated institutional investor, the Iron Workers is a paradigmatic lead plaintiff under the PSLRA, and their appointment would advance the legislative purpose of "increasing the role of institutional investors in class actions" in order to "benefit shareholders and assist courts by improving the quality of representation in securities class actions."  H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* U.S.C.C.A.N. 730, 733.   For this reason, courts in the Second Circuit strongly prefer appointment of institutional investors to lead complex securities class actions.  *See, e.g.*, *Glauser v. EVCI Career Colleges Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) ("[T]he PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one.") (quoting *In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 332-33 (S.D.N.Y. 2005)); *Micholle v. Ophthotech Corp.*, 17-CV-210 (VSB) *et al.*, 2018 U.S. Dist. LEXIS 41120, at *17 (S.D.N.Y. Mar. 13, 2018) ("[C]ourts have a preference for appointing institutional investors as lead plaintiffs.").

2

In order to fulfill its responsibilities as Lead Plaintiff and vigorously prosecute this action on behalf of the Class, Iron Workers has selected Pomerantz as Lead Counsel for the Class. Pomerantz is a nationally-recognized securities class action firm that has recovered billions of dollars on behalf of defrauded investors, and recently secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the fifth largest class action settlement ever achieved in the United States. Based in New York, Pomerantz has offices in Chicago, Los Angeles, and Paris, France.

Accordingly, based on its very significant financial interest, and its commitment as a sophisticated institutional investor to overseeing this litigation, Iron Workers respectfully requests that the Court enter an order appointing it as Lead Plaintiff and approving its selection of Lead Counsel.

## STATEMENT OF FACTS

As alleged in the Complaints, FedEx is a global logistics company that ships goods to commercial and residential customers throughout the world. Traditionally, FedEx has generated a substantial majority of its revenues in the United States. During its fiscal year 2016,[1] FedEx generated 76 percent of its revenues in the United States and 24 percent of its revenues in international markets.

In July 2016, FedEx significantly expanded its international operations through its $4.8 billion acquisition of TNT Express N.V. ("TNT"), a Netherlands-based logistics company with operations concentrated in Europe. To date, this has been the largest acquisition in FedEx history. This acquisition instantly added billions of dollars of European revenues to FedEx's

---

[1] The Company's fiscal year ends on May 31. For example, FedEx's fiscal year 2016 ended on May 31, 2016.

topline and increased the Company's international revenue mix from 24 percent in fiscal year 2016 to 33 percent in fiscal year 2017.

After the acquisition closed, FedEx embarked on an aggressive strategy to integrate its legacy European operations with TNT.  On March 31, 2017, nine months after completing the acquisition, FedEx issued a three-year operating income improvement target in order for investors to gauge and track the purported benefits of the TNT acquisition and FedEx's integration efforts.  Specifically, the Company stated that, in fiscal year 2020, its integration with TNT would result in a $1.2 billion to $1.5 billion operating income improvement above its fiscal year 2017 reported operating income (the "TNT Income Improvement Target").

On June 27, 2017, however, TNT's operations were crippled by a cyberattack known as NotPetya, which involved the spread of a malware virus throughout TNT's systems (the "Cyberattack").  NotPetya is considered one of the largest cyberattacks in history, having affected a multitude of companies on a global scale.  The timing of the attack was particularly problematic for FedEx, as TNT's systems were paralyzed during the critical period involving the integration of TNT with the Company's legacy European operations.

The Class Period starts on September 19, 2017, when FedEx reported that the Cyberattack had negatively impacted its first quarter 2018 results (ended August 30, 2017). During the related earnings call, however, Defendants assured investors that all critical TNT systems were fully restored and fixes to its customer-specific systems were expected to be finalized by the end of September 2017.  Company executives also reaffirmed the TNT Income Improvement Target.  Analysts maintained their ratings and price targets on FedEx stock due to the Company's assurances about its recovery from the Cyberattack.  On this news, FedEx stock increased $4.50 per share, or 2.1 percent, to close at $220.00 per share on September 20, 2017.

Throughout the Class Period, Defendants continually assured investors about its recovery from the Cyberattack and that any negative impact from the attack was minimal.  For example, Defendants told investors that TNT customer volumes were being restored to pre-attack levels and that "despite the cyberattack, the customers stuck with us."  Defendants also stated that TNT integration efforts were successfully progressing and continuously stated that FedEx was "on track" to achieve the TNT Income Improvement Target.

Notwithstanding these positive representations to the market, Defendants made false and misleading statements and/or failed to disclose that: (1) TNT's overall package volume growth was slowing as TNT's large customers permanently took their business to competitors after the Cyberattack; (2) as a result of the customer attrition, TNT was experiencing an increased shift in product mix from higher-margin parcel services to lower-margin freight services; (3) the anticipated costs and timeframe to integrate and restore the TNT network were significantly larger and longer than disclosed; (4) FedEx was not on track to achieve the TNT Income Improvement Target; and (5) as a result of these undisclosed negative trends and cost issues, FedEx's positive statements about TNT's recovery from the Cyberattack, integration into FedEx's legacy operations, customer mix, customer service levels, profitability, and prospects lacked a reasonable basis.

The truth about TNT's deteriorating business was revealed through a series of disclosures.  While making these disclosures, however, Defendants continued to assure investors that FedEx would still be able to meet the TNT Income Improvement Target, and that TNT had successfully recovered in the wake of the Cyberattack.

On June 19, 2018, FedEx provided a disappointing capital expenditure outlook for its FedEx Express segment, the reporting segment that includes TNT's results, and reported higher-

5

than-expected TNT integration expenses.  On this news, FedEx shares dropped $6.96, or 2.7 percent on June 20, 2018.  Despite these issues, Defendants assured investors that the Company was "on track" to meet the TNT Income Improvement Target, and that TNT's year-over-year growth had resumed.

On September 17, 2018, FedEx reported lower-than-expected earnings for its first quarter ended August 30, 2018.  The Company partially attributed these results to higher-than-expected TNT integration costs.  On this news, FedEx stock dropped $14.15 per share, or 5.5 percent, to close at $241.58 per share on September 18, 2018.  Defendants, however, again assured investors that the Company was on track for to meet the TNT Income Improvement Target, and touted that the Company's "strong international volume growth reflect[ed] [FedEx's] recovery from the TNT cyberattack."

On December 7, 2018, FedEx announced that David L. Cunningham would retire as FedEx Express' President and Chief Executive Officer on December 31, 2018.  Analysts immediately suggested that Cunningham's "retirement" was a result of performance issues within the Company's FedEx Express segment.  On this news, FedEx stock dropped $13.67 per share, or 6.4 percent, to close at $201.39 per share on December 7, 2018.

The full extent of TNT's deteriorating business was revealed to investors on December 18, 2018 after the close of trading.  On that date, FedEx reported a large profit miss for its second fiscal quarter ended November 30, 2018.  Defendants attributed the disappointing results to lower package volumes in Europe and a negative shift in TNT's product mix to lower margin freight business following the Cyberattack—which had occurred well-over a year ago.  The Company also lowered its fiscal 2019 earnings guidance and announced that the TNT Income Improvement Target would no longer be achievable by fiscal year 2020.  On this news, FedEx

6

stock dropped $22.50 per share, or 12.2 percent, to close at $162.51 per share on December 19, 2018.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**ARGUMENT**

**I.      THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES**

Consolidation of related cases is appropriate, where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay and overlap in adjudication:

> Where actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such order concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a). *See also* Manual for Complex Litigation (Third), § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact.  *See* Fed. R. Civ. P. 42 (a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same).   Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation. *See In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *4–8

7

(S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Related Actions at issue here clearly involve common questions of law ***and*** fact. Each action is brought against the Company, as well as certain officers and directors of the Company, in connection with violations of the federal securities laws. Accordingly, the Related Actions allege substantially the same wrongdoing, namely that Defendants issued materially false and misleading statements and omissions that artificially inflated the price of FedEx's securities and subsequently damaged the Class when the Company's share price crashed as the truth emerged. Consolidation of the Related Actions is therefore appropriate. *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *In re GE*, 2009 U.S. Dist. LEXIS 69133), at *5 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

## II.    IRONWORKERS SHOULD BE APPOINTED LEAD PLAINTIFF

Ironworkers should be appointed Lead Plaintiff because, to its knowledge, Ironworkers has the largest financial interest in the Related Actions and otherwise satisfies the requirements of Rule 23. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action and to do so by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) & (ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any

8

such notice.  Specifically, the Court "shall" appoint the presumptively "most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
>  (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Ironworkers satisfies all three of these criteria and thus is entitled to the presumption that it is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### A.    Ironworkers is willing to serve as a Class Representative and has timely filed this motion to be appointed Lead Plaintiff.

On June 26, 2019, counsel for plaintiff in the first-filed of the Related Actions caused a notice to be published over *Globe Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities fraud class action had been filed against Defendants and which advised investors in FedEx securities that they had 60 days—*i.e.*, until August 26, 2019—to file a motion to be appointed as lead plaintiff (the "PSLRA Notice").  *See* Lieberman Decl., Ex. B. Ironworkers has timely filed the instant motion pursuant to the PSLRA Notice, and it has attached a sworn Certification executed on its behalf by Brian Sabbagh, who, as Fund Administrator, has authority to enter into litigation on behalf of Ironworkers, attesting that Ironworkers is willing to serve as a representative for the Class and to provide testimony at deposition and trial, if necessary.  *See id.*, Ex. C.  Accordingly, Ironworkers satisfies the first requirement to serve as Lead Plaintiff of the Class.  Iron Workers is also exactly the sort of well-

managed, sophisticated institutional investor that Congress intended to fulfill the lead plaintiff role created by the PSLRA.

**B.    Ironworkers has the "largest financial interest" in the Related Actions.**

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). To the best of its knowledge, Ironworkers has the largest financial interest of any FedEx investor or investor group seeking to serve as Lead Plaintiff. For claims arising under federal securities laws, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. Nos. 97 C 2715 *et al.*, 1997 U.S. Dist. LEXIS 11866, at *17 (N.D. Ill. Aug. 6, 1997). In accord with other courts nationwide,[2] these *Lax* factors have been adopted and routinely applied by courts in this judicial district. *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, 18-CV-2268 *et al.*, 2018 U.S. Dist. LEXIS 104185, at *12 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, 17-CV-06130 (LTS)(SN), 2017 U.S. Dist. LEXIS 187238, at *3 (S.D.N.Y. Nov. 13, 2017); *Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004).

During the Class Period, Ironworkers: (1) purchased 6,620 FedEx shares; (2) expended $1,510,250 on purchases of FedEx shares; (3) retained all of its FedEx shares; and (4) incurred losses of $406,714 on a FIFO basis and $331,707 on a LIFO basis in connection with its

---

[2] *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 U.S. Dist. LEXIS 14878, at *22-*25 (E.D.N.Y. Mar. 2, 2007).

transactions in FedEx securities.  *See* Lieberman Decl., Ex. A.  To the extent that Ironworkers possesses the largest financial interest in the outcome of this litigation, it is the presumptive "most adequate" plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### C.      Ironworkers otherwise satisfies the Requirements of Rule 23.

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that a lead plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, "[t]he parties moving for lead plaintiff are only required to make a *prima facie* showing that they meet [the requirements of] Rule 23".  *Aude v. Kobe Steel, Ltd.*, 17-CV-10085, 2018 U.S. Dist. LEXIS 57591, at *8 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required.").  Moreover, "[t]ypicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA."  *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998); *see also Aude*, 2018 U.S. Dist. LEXIS 57591, at *8.  Here, the Complaints in the Related Actions sufficiently plead Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all class members, including Ironworkers.

11

The typicality requirement of Fed. R. Civ. P. 23(a)(3) "is satisfied if 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Orion Secs. Litig.*, 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368, at \*12 (S.D.N.Y. July 7, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291) (2d Cir. 1992)). "[T]he claims of the class representative need not be identical those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'" *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (2d Cir. 1992)).

Ironworkers' claims are typical of those of the Class. Ironworkers alleges, as do all Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts and/or omitting to disclose material facts concerning FedEx. Ironworkers, as did all members of the Class, purchased FedEx securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations and/or omissions that drove FedEx's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy."

12

*Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. Xunlei Ltd.*, 18-cv-467 (RJS) *et al.*, 2018 U.S. Dist. LEXIS 62575, at *6 (S.D.N.Y. Apr. 12, 2018) (same).

As set forth in greater detail below, in Pomerantz, Ironworkers has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as these Related Actions, and submits its choice of Pomerantz to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).    There is no evidence of antagonism or conflict between Ironworkers' interests and the interests of the Class.    Ironworkers has submitted a sworn Certification executed on its behalf by Brian Sabbagh, who, as Fund Administrator, has authority to enter into litigation on behalf of Ironworkers, declaring its commitment to protect the interests of the Class (*see* Lieberman Decl., Ex. C), and the significant losses incurred by Ironworkers demonstrate that it has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy.

As noted above, Ironworkers is a sophisticated institutional investor.    As such, its appointment as Lead Plaintiff would be consistent with the PSLRA's preference for the appointment of institutional investors as class representatives in securities class actions.  *See* H.R. Conf. Rep. No. 104-369, at 34 ("increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions").  Indeed, courts strongly prefer appointment of institutional investors to lead complex securities class actions.  *See, e.g.*, *Glauser*, 236 F.R.D. at 188 ("[T]he PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one.") (quoting *In re Veeco Instruments*, 233 F.R.D. at 332-33); *Ophthotech*, 2018 U.S. Dist. LEXIS 41120, at *17 ("[C]ourts have a preference for

13

appointing institutional investors as lead plaintiffs."); *In re Braskem S.A. Sec. Litig.*, 15 Civ. 5132 (PAE) *et al.*, 2015 U.S. Dist. LEXIS 119183, at \*14 (S.D.N.Y. Sept. 8, 2015) (appointing as lead plaintiff "an institutional investor, the type of investor Congress prefers as lead plaintiff"); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 n.8 (S.D.N.Y. 2006) (appointing as lead plaintiff a "large institutional investor . . . precisely the type of plaintiff envisioned under the PSLRA").

### III.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should only interfere with lead plaintiff's choice if necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).  *See also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.") (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008)).

Here, Ironworkers has selected Pomerantz as Lead Counsel for the Class.  Pomerantz is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume. *See* Lieberman Decl., Ex. D.  Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petróleo Brasileiro S.A. — Petrobras, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer.  Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in June 2010. *See* Lieberman Decl., Ex. D.  Most recently, Pomerantz announced as Lead Counsel on behalf of a

14

class of Fiat Chrysler Automobiles N.V. investors that it has reached a $110 million settlement with the company. *See* THE WALL STREET JOURNAL, *Fiat Chrysler to Settle Lawsuit for $110 Million*, April 8, 2019 (available at https://www.wsj.com/articles/fiat-chrysler-to-settle-lawsuit-for-110-million-11554746066). As a result of Pomerantz's extensive experience in securities litigation and class actions involving issues similar to those raised in these Related Actions, Pomerantz has the skill and knowledge necessary to enable the effective and expeditious prosecution of the Related Actions. Thus, the Court may be assured that by approving the selection of counsel by Ironworkers, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Ironworkers respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Ironworkers as Lead Plaintiff; and (3) approving proposed Lead Plaintiff's selection of Pomerantz as Lead Counsel for the Class.

Dated:  August 26, 2019

Respectfully submitted,
POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Counsel for Lead Plaintiff Movant*
*and Proposed Lead Counsel for the Class*