**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RHODE ISLAND LABORERS' PENSION FUND, Individually and on Behalf of All Others Similarly Situated, ) ) ) ) Plaintiff, ) ) vs. ) ) FEDEX CORPORATION, FREDERICK W. ) SMITH, ALAN B. GRAF, JR., DAVID J. ) BRONCZEK, RAJESH SUBRAMANIAM, ) DAVID L. CUNNINGHAM, DONALD F. ) COLLERAN, and MICHAEL C. LENZ, ) ) ) Defendants. ) ) ) ) | Case No. 1:19-cv-05990-RA<br><br>Judge Ronnie Abrams<br><br><u>CLASS ACTION</u><br><br>**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF EMPLOYEES' RETIREMENT SYSTEM OF THE STATE OF RHODE ISLAND FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL**<br><br><u>ORAL ARGUMENT REQUESTED</u> |
| SELWYN KARP, Individually and on Behalf of All Others Similarly Situated, ) ) ) ) Plaintiff, ) ) vs. ) ) FEDEX CORPORATION, FREDERICK W. ) SMITH, ALAN B. GRAF, JR., DAVID J. ) BRONCZEK, RAJESH SUBRAMANIAM, ) DAVID L. CUNNINGHAM, DONALD F. ) COLLERAN, and MICHAEL C. LENZ, ) ) ) Defendants. ) | Case No. 1:19-cv-06183-RA<br><br>Judge Ronnie Abrams |

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND .................................................................................................... 3

ARGUMENT ............................................................................................................................ 7

    I.      THE ACTIONS SHOULD BE CONSOLIDATED ............................................... 7

    II.     RHODE ISLAND SHOULD BE APPOINTED LEAD PLAINTIFF .................... 8

          A.     The PSLRA Standard For Appointing Lead Plaintiff ................................ 8

          B.     Rhode Island Is The "Most Adequate Plaintiff" ........................................ 9

                1.     Rhode Island's Motion Is Timely ..................................................... 9

                2.     Rhode Island Has a Substantial Financial Interest .......................... 9

                3.     Rhode Island Satisfies Rule 23's Typicality and Adequacy Requirements .............................................................................. 10

          C.     As An Institutional Investor, Rhode Island Is Precisely The Type Of Lead Plaintiff Congress Envisioned When It Passed The PSLRA ....................................................................................................... 12

    III.    RHODE ISLAND'S SELECTION OF CO-LEAD COUNSEL MERITS APPROVAL ...................................................................................................... 13

CONCLUSION ...................................................................................................................... 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albert Fadem Trust v. Citigroup Inc.*,
    239 F. Supp. 2d 344 (S.D.N.Y. 2002)........................................................................7

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
    252 F.R.D. 188 (S.D.N.Y. 2008) ..............................................................................7

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)....................................................................................14

*City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*,
    269 F.R.D. 291 (S.D.N.Y. 2010) ............................................................................10

*In re Deutsche Bank Aktiengesellschaft Sec. Litig.*,
    No. 16-CV-03495(AT)(BCM), 2016 WL 5867497 (S.D.N.Y. Oct. 4, 2016) .........10

*Dube v. Signet Jewelers Ltd.*,
    No. 16-CV-6728 (JMF), 2017 WL 1379385 (S.D.N.Y. Apr. 14, 2017) .................10

*In re Elan Corp. Sec. Litig.*,
    No. 1:08-cv-08761-AKH, 2009 WL 1321167 (S.D.N.Y. May 11, 2009) ...............11

*Faig v. Bioscrip, Inc.*,
    No. 13 Civ. 06922 (AJN), 2013 WL 6705045 (S.D.N.Y. Dec. 19, 2013).........10, 11

*Foley v. Transocean Ltd.*,
    272 F.R.D. 126 (S.D.N.Y. 2011) ..............................................................................9

*Glauser v. EVCI Career Colls. Holding Corp.*,
    236 F.R.D. 184 (S.D.N.Y. 2006) ..............................................................................2

*Kemp v. Universal Am. Fin. Corp.*,
    No. 05 Civ. 9883 (JFK), 2006 WL 1190691 (S.D.N.Y. May 1, 2006) ....................9

*In re KIT Digital, Inc. Sec. Litig.*,
    293 F.R.D. 441 (S.D.N.Y. 2013) ............................................................................13

*Kux-Kardos v. VimpelCom, Ltd.*,
    151 F. Supp. 3d 471 (S.D.N.Y. 2016)......................................................................10

*Lipetz v. Wachovia Corp.*,
    No. 08 Civ. 6171 (RJS), 2008 WL 4615895 (S.D.N.Y. Oct. 10, 2008) .................12

*Lowinger v. Global Cash Access Holdings, Inc.*,
No. 08 Cv. 3516 (SWK), 2008 WL 2566558 (S.D.N.Y. June 26, 2008) ..................................7

*Micholle v. Ophthotech Corp.*,
No. 17-CV-210 (VSB), 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018)....................................9

*In re Orion Sec. Litig.*,
No. 08 Civ. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 8, 2008) ....................................7

*Peifa Xu v. Gridsum Holding Inc.*,
No. 18 Civ. 3655 (ER), 2018 WL 4462363 (S.D.N.Y. Sept. 17, 2018) ..................................7

*Randall v. Fifth St. Fin. Corp.*,
No. 15-cv-7759, 2016 WL 462479 (S.D.N.Y. Feb. 1, 2016) ...................................................10

*Reitan v. China Mobile Games & Entm't Grp., Ltd. (China Mobile)*,
68 F. Supp. 3d 390 (S.D.N.Y. 2014)......................................................................................13

*Teran v. Subaye*, Inc.,
No. 11 Civ. 2614 (NRB), 2011 WL 4357362 (S.D.N.Y. Sept. 16, 2011) ..............................11

*In re Third Ave. Mgmt. LLC Sec. Litig.*,
No. 16-cv-02758 (PKC), 2016 WL 2986235 (S.D.N.Y. May 13, 2016)................................10

**Rules & Statutes**

Fed. R. Civ. P. 23 ................................................................................................. *passim*

Fed. R. Civ. P. 42 .........................................................................................................7, 8

15 U.S.C. § 78u-4 *et seq.* ...................................................................................... *passim*

**Docketed Cases**

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
No. 04-cv-08141 (S.D.N.Y.)...................................................................................................14

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
No. 09-md-02058 (S.D.N.Y.) .................................................................................................15

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
No. 08-md-01963 (S.D.N.Y.) .................................................................................................14

*In re Citigroup Inc. Bond Litig.*,
No. 08-cv-09522 (S.D.N.Y.)...................................................................................................15

*In re Coinstar Inc. Sec. Litig.*,
   No. 11-cv-00133 (W.D. Wash.)........................................................................................13

*In re Facebook, Inc. IPO Sec. and Derivative Litig.*,
   No. 12-md-02389 (S.D.N.Y.) .....................................................................................15, 16

*In re Fannie Mae 2008 Sec. Litig.*,
   No. 08-cv-07831 (S.D.N.Y.).............................................................................................14

*In re HeartWare Int'l, Inc. Sec. Litig.*,
   No. 16-cv-00520-RA (S.D.N.Y.) .....................................................................................15

*In re Lehman Bros. Equity/Debt Sec. Litig.*,
   No. 09-md-02017-LAK (S.D.N.Y) ...................................................................................15

*In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*,
   MDL No. 1658 (D.N.J.)....................................................................................................15

*In re Nortel Networks Corp. Sec. Litig.*,
   No. 05-md-01659-LAP (S.D.N.Y.) ..................................................................................15

*In re Refco, Inc. Sec. Litig.*,
   No. 05-cv-08626-JSR (S.D.N.Y.).....................................................................................15

*In re Satyam Comput. Servs. Ltd. Sec. Litig.*,
   No. 09-md-02027 (S.D.N.Y.) ...........................................................................................14

*In re Schering-Plough Corp./ENHANCE Sec. Litig.*,
   No. 08-cv-00397 (D.N.J.) .................................................................................................15

*In re Virtus Inv. Partners Inc. Sec. Litig.*,
   No. 15-cv-01249 (S.D.N.Y.).............................................................................................16

*In re Wachovia Preferred Sec. and Bond/Notes Litig.*,
   No. 09-cv-06351-RJS (S.D.N.Y) .....................................................................................15

*In re WorldCom, Inc. Sec. Litig.*,
   No. 02-cv-03288 (S.D.N.Y.).............................................................................................15

## Other Authorities

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ...............2, 12, 13, 14

S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679...................................................2

Proposed Lead Plaintiff Employees' Retirement System of the State of Rhode Island ("Rhode Island") respectfully submits this Memorandum of Law pursuant to Section 21(D)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(D)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), in support of its motion for the entry of an Order: (i) consolidating the above-captioned actions (the "Action"); (ii) appointing Rhode Island as Lead Plaintiff on behalf of the Class of all persons who purchased, or otherwise acquired, FedEx Corporation ("FedEx" or the "Company") securities during the period from September 19, 2017 through December 18, 2018, inclusive (the "Class Period"); (iii) approving Rhode Island's selection of Labaton Sucharow LLP ("Labaton Sucharow") and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Co-Lead Counsel for the Class; and (iv) granting such other and further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

Rhode Island—a sophisticated institutional investor—respectfully submits that it should be appointed Lead Plaintiff on behalf of all investors who purchased or otherwise acquired FedEx securities during the Class Period (the "Class"), and who were damaged as a result of defendants' alleged fraud. The Action alleges violations of Sections 10(b) and 20(a) of the Exchange Act against FedEx and certain of its executive officers (collectively, the "Defendants").

The PSLRA requires that the Court appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court must determine which movant has the "largest financial interest" in the relief sought by the Class, and also whether such movant has made a *prima facie* showing that it is a typical and adequate Class representative

under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

For the reasons discussed below, Rhode Island respectfully submits that it is the "most adequate plaintiff" under the PSLRA and should be appointed Lead Plaintiff.  Rhode Island incurred losses of **$823,973.67** on its Class Period transactions in FedEx securities as calculated on a last-in-first-out ("LIFO") basis.[1]  Accordingly, Rhode Island has a substantial financial interest in directing this litigation and recovering losses attributable to Defendants' violations of federal securities laws—an interest believed to be greater than that of any other qualified movant.

In addition to asserting a substantial financial interest in this litigation, Rhode Island also meets the typicality and adequacy requirements of Rule 23 because: (i) its claims arise from the same course of events as those of the other Class members, (ii) it relies on similar legal theories to prove Defendants' liability, and (iii) it has retained experienced counsel and is committed to vigorously prosecuting the Action.  Furthermore, the PSLRA's legislative history shows that a large, sophisticated institutional investor like Rhode Island is precisely the type of investor that Congress intended to empower to lead securities class action litigation.  *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733; S. Rep. No. 104-98, at *6 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 685; *see also Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) ("the PSLRA was passed . . . to increase

---

[1]    A copy of the Certification of Rhode Island, signed by Amy L. Crane, the General Counsel for the State of Rhode Island Office of the General Treasurer ("Certification"), is attached as Exhibit A to the Declaration of Francis P. McConville (the "McConville Decl.").  The Certification sets forth all transactions of Rhode Island in FedEx securities during the Class Period.  In addition, a table reflecting the calculation of financial losses sustained by Rhode Island on its Class Period transactions in FedEx securities ("Loss Analysis") is attached as Exhibit B to the McConville Decl.

the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one") (citation omitted).

Finally, pursuant to the PSLRA, Rhode Island respectfully requests that the Court approve the selection of Labaton Sucharow and Bernstein Litowitz as Co-Lead Counsel for the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("[T]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class").  Labaton Sucharow and Bernstein Litowitz are nationally recognized securities class action firms that have frequently worked together and recovered billions of dollars for the benefit of injured investors, and have the expertise and resources necessary to handle litigation of this complexity and scale.

Accordingly, Rhode Island respectfully requests that the Court appoint it as Lead Plaintiff for the Class and approve its choice of Co-Lead Counsel.

## FACTUAL BACKGROUND

FedEx is a global logistics company that ships goods to commercial and residential customers throughout the world.  Traditionally, FedEx has generated a substantial majority of its revenues in the United States.  During its fiscal year 2016, FedEx generated 76 percent of its revenues in the United States and 24 percent of its revenues in international markets.

In July 2016, FedEx significantly expanded its international operations through its $4.8 billion acquisition of TNT Express N.V. ("TNT"), a Netherlands-based logistics company with operations concentrated in Europe.  To date, this has been the largest acquisition in FedEx history.  This acquisition instantly added billions of dollars of European revenues to FedEx's topline and increased the Company's international revenue mix from 24 percent in fiscal year 2016 to 33 percent in fiscal year 2017.

After the acquisition closed, FedEx embarked on an aggressive strategy to integrate its legacy European operations with TNT.  On March 31, 2017, nine months after completing the

3

acquisition, FedEx issued a three-year operating income improvement target in order for investors to gauge and track the purported benefits of the TNT acquisition and FedEx's integration efforts.  Specifically, the Company stated that, in fiscal year 2020, its integration with TNT would result in a $1.2 billion to $1.5 billion operating income improvement above its fiscal year 2017 reported operating income (the "TNT Income Improvement Target").

On June 27, 2017, however, TNT's operations were crippled by a cyberattack known as NotPetya, which involved the spread of a malware virus throughout TNT's systems (the "Cyberattack").  NotPetya is considered one of the largest cyberattacks in history, having affected a multitude of companies on a global scale.  The timing of the attack was particularly problematic for FedEx, as TNT's systems were paralyzed during the critical period involving the integration of TNT with the Company's legacy European operations.

The Class Period starts on September 19, 2017, when FedEx reported that the Cyberattack had negatively impacted its first quarter 2018 results (ended August 30, 2017).  During the related earnings call, however, Defendants assured investors that all critical TNT systems were fully restored and fixes to its customer-specific systems were expected to be finalized by the end of September 2017.  Company executives also reaffirmed the TNT Income Improvement Target.  Analysts maintained their ratings and price targets on FedEx stock due to the Company's assurances about its recovery from the Cyberattack.  On this news, FedEx stock increased $4.50 per share, or 2.1 percent, to close at $220.00 per share on September 20, 2017.

Throughout the Class Period, Defendants continually assured investors about its recovery from the Cyberattack and that any negative impact from the attack was minimal.  For example, Defendants told investors that TNT customer volumes were being restored to pre-attack levels and that "despite the cyberattack, the customers stuck with us."  Defendants also stated that TNT

4

integration efforts were successfully progressing and continuously stated that FedEx was "on track" to achieve the TNT Income Improvement Target.

Notwithstanding these positive representations to the market, Defendants made false and misleading statements and/or failed to disclose that: (i) TNT's overall package volume growth was slowing as TNT's large customers permanently took their business to competitors after the Cyberattack; (ii) as a result of the customer attrition, TNT was experiencing an increased shift in product mix from higher-margin parcel services to lower-margin freight services; (iii) the anticipated costs and timeframe to integrate and restore the TNT network were significantly larger and longer than disclosed; (iv) FedEx was not on track to achieve the TNT Income Improvement Target; and (v) as a result of these undisclosed negative trends and cost issues, FedEx's positive statements about TNT's recovery from the Cyberattack, integration into FedEx's legacy operations, customer mix, customer service levels, profitability, and prospects lacked a reasonable basis.

The truth about TNT's deteriorating business was revealed through a series of disclosures. While making these disclosures, however, Defendants continued to assure investors that FedEx would still be able to meet the TNT Income Improvement Target, and that TNT had successfully recovered in the wake of the Cyberattack.

On June 19, 2018, FedEx provided a disappointing capital expenditure outlook for its FedEx Express segment, the reporting segment that includes TNT's results, and reported higher-than-expected TNT integration expenses. On this news, FedEx shares dropped $6.96, or 2.7 percent on June 20, 2018. Despite these issues, Defendants assured investors that the Company was "on track" to meet the TNT Income Improvement Target, and that TNT's year-over-year growth had resumed.

On September 17, 2018, FedEx reported lower-than-expected earnings for its first quarter ended August 30, 2018. The Company partially attributed these results to higher-than-expected TNT integration costs. On this news, FedEx stock dropped $14.15 per share, or 5.5 percent, to close at $241.58 per share on September 18, 2018. Defendants, however, again assured investors that the Company was on track to meet the TNT Income Improvement Target, and touted that the Company's "strong international volume growth reflect[ed] [FedEx's] recovery from the TNT cyberattack."

On December 7, 2018, FedEx announced that David L. Cunningham would retire as FedEx Express' President and CEO on December 31, 2018. Analysts immediately suggested that Cunningham's "retirement" was a result of performance issues within the Company's FedEx Express segment. On this news, FedEx stock dropped $13.67 per share, or 6.4 percent, to close at $201.39 per share on December 7, 2018.

The full extent of TNT's deteriorating business was revealed to investors on December 18, 2018 after the close of trading. On that date, FedEx reported a large profit miss for its second fiscal quarter ended November 30, 2018. Defendants attributed the disappointing results to lower package volumes in Europe and a negative shift in TNT's product mix to lower margin freight business following the Cyberattack—which had occurred well-over a year ago. The Company also lowered its fiscal 2019 earnings guidance and announced that the TNT Income Improvement Target would no longer be achievable by fiscal year 2020. On this news, FedEx stock dropped $22.50 per share, or 12.2 percent, to close at $162.51 per share on December 19, 2018.

Defendants' violations of the securities laws and the revelations thereof have caused Rhode Island and the Class to incur significant losses.

**ARGUMENT**

## I.    THE ACTIONS SHOULD BE CONSOLIDATED

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter [is] filed," the court shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii); *see also Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) ("[T]he Court shall not make the determination of the most adequate plaintiff until after the decision on the motion to consolidate is rendered.") (quotation marks and citation omitted).

Consolidation pursuant to Rule 42(a) is appropriate when actions "involve common questions of law or fact." *Peifa Xu v. Gridsum Holding Inc.*, No. 18 Civ. 3655 (ER), 2018 WL 4462363, at *3 (S.D.N.Y. Sept. 17, 2018) (citation omitted). "A determination on the issue of consolidation is left to the sound discretion of the Court." *Albert Fadem Trust v. Citigroup Inc.*, 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990); *Zicklin v. Breuer*, 534 F. Supp. 745, 749 (S.D.N.Y. 1982)). "'[C]onsolidation is particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and reports.'" *Lowinger v. Global Cash Access Holdings, Inc.*, No. 08 Cv. 3516 (SWK), 2008 WL 2566558, at *1 (S.D.N.Y. June 26, 2008) (citing *Glauser v. EVCI Ctr. Colls. Holding Corp.*, 236 F.R.D. 184, 186 (S.D.N.Y. 2006)). "[S]light differences in the facts alleged and legal issues raised do not preclude consolidation." *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *3 (S.D.N.Y. July 8, 2008).

The Actions are well-suited for consolidation. The complaint filed in each of the Actions alleges that Defendants violated the Exchange Act. Each action sets forth identical allegations

7

relating to similar parties, transactions, and events—primarily Defendants' materially false and misleading statements and omissions in connection FedEx's integration of TNT. Because consolidation will promote judicial efficiency and conserve the resources of the Class and all other parties, consolidation is appropriate pursuant to Rule 42(a). Accordingly, Rhode Island respectfully requests that the Court consolidate the Actions, and any other subsequently-filed action.

## II.   RHODE ISLAND SHOULD BE APPOINTED LEAD PLAINTIFF

Rhode Island respectfully submits that it should be appointed Lead Plaintiff because it filed the instant motion in a timely manner, has a substantial financial interest in this litigation, and satisfies the typicality and adequacy requirements of Rule 23.

### A.   The PSLRA Standard For Appointing Lead Plaintiff

The PSLRA provides a straightforward procedure for selecting a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B) (setting forth procedure for selecting lead plaintiff). First, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class–
>
> (I)   of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)   that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, pursuant to the PSLRA, a court is to consider any motion made by class members to serve as lead plaintiff and appoint the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i). In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person who: (i) filed a complaint or made a motion to serve as lead plaintiff; (ii) has the largest financial interest in the relief sought by the class; and (iii) who otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127 (S.D.N.Y. 2011). This presumption may be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *Micholle v. Ophthotech Corp.*, No. 17-CV-210 (VSB), 2018 WL 1307285, at *4 (S.D.N.Y. Mar. 13, 2018).

### B.    Rhode Island Is The "Most Adequate Plaintiff"

#### 1.    Rhode Island's Motion Is Timely

Rhode Island filed this motion to serve as Lead Plaintiff in a timely manner. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), on June 26, 2019, the plaintiff in the first-filed action published a notice of pendency on *Globe Newswire,* alerting investors that the deadline to seek Lead Plaintiff status was no later than 60 days from the June 26, 2019 notice (or no later than August 26, 2019). *See* McConville Decl., Ex. C. Rhode Island filed its motion seeking appointment as Lead Plaintiff within this deadline and thus has satisfied the procedural requirements of the PSLRA.

#### 2.    Rhode Island Has a Substantial Financial Interest

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Kemp v. Universal Am. Fin. Corp.*, No. 05 Civ. 9883 (JFK), 2006 WL 1190691, at *2 (S.D.N.Y. May 1, 2006) (Keenan, J.).

Rhode Island incurred a substantial loss of **$823,973.67** on its transactions in FedEx securities on a LIFO basis during the Class Period.  *See* Loss Analysis, McConville Decl., Ex. B; *see also Faig v. Bioscrip, Inc.*, No. 13 Civ. 06922 (AJN), 2013 WL 6705045, at *2 (S.D.N.Y. Dec. 19, 2013) (finding the movant with the largest financial interest to be the presumptive "most adequate plaintiff").  Accordingly, Rhode Island has a substantial financial interest as a qualified movant seeking Lead Plaintiff status, and is the presumptive "most adequate plaintiff." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Dube v. Signet Jewelers Ltd.*, No. 16-CV-6728 (JMF), 2017 WL 1379385, at *2 (S.D.N.Y. Apr. 14, 2017) (movant with largest financial loss is presumptive lead plaintiff); *In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, No. 16-CV-03495(AT)(BCM), 2016 WL 5867497, at *3 (S.D.N.Y. Oct. 4, 2016) (same); *Randall v. Fifth St. Fin. Corp.*, No. 15-cv-7759 (LANK), 2016 WL 462479, at *1 (S.D.N.Y. Feb. 1, 2016) (same); *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 269 F.R.D. 291, 296 (S.D.N.Y. 2010) (same).

### 3.    Rhode Island Satisfies Rule 23's Typicality and Adequacy Requirements

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  *In re Third Ave. Mgmt. LLC Sec. Litig.,* No. 16-cv-02758 (PKC), 2016 WL 2986235, at *1 (S.D.N.Y. May 13, 2016).  At the lead plaintiff selection stage all that is required to satisfy Rule 23 is a preliminary showing that the lead plaintiff's claims are typical and adequate.  *Kux-Kardos v. VimpelCom, Ltd.,* 151 F. Supp. 3d 471, 477 (S.D.N.Y. 2016); *see also Faig*, 2013 WL 6705045, at *3 ("[A]t this stage of the litigation, a moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.") (citation omitted).  Here, Rhode Island unquestionably satisfies both requirements.

### (i)    Rhode Island Satisfies the Typicality Requirement of Rule 23

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims, and plaintiff's claims are based on the same legal theory. *See Faig*, 2013 WL 6705045, at *3. Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id.*

Rhode Island's claims are typical of the claims asserted by the proposed Class. Like all members of the Class, Rhode Island alleges that Defendants made material misstatements and omissions regarding TNT's recovery from the Cyberattack, integration into FedEx's legacy operations, customer mix, customer service levels, and profitability in violation of the federal securities laws. Rhode Island, like all of the members of the Class, purchased FedEx securities in reliance on Defendants' alleged misstatements and omissions and was damaged thereby. Because Rhode Island's claims arise from the same course of events as the claims of other Class members, the typicality requirement is satisfied. *See Teran v. Subaye*, Inc., No. 11 Civ. 2614 (NRB), 2011 WL 4357362, at *5 (S.D.N.Y. Sept. 16, 2011).

### (ii)    Rhode Island Satisfies the Adequacy Requirement of Rule 23

Rhode Island likewise satisfies the adequacy requirement of Rule 23. The adequacy of representation requirement of Rule 23(a)(4) is satisfied when a representative party establishes that it "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts in this District assess a movant's adequacy based on: "(1) the size, available resources and experience of the proposed lead plaintiff; (2) the qualifications of the proposed class counsel; and (3) any potential conflicts or antagonisms rising among purported class members." *In re Elan Corp. Sec. Litig.*, No. 1:08-cv-08761-AKH, 2009 WL 1321167, at *2 (S.D.N.Y. May 11, 2009) (citing *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, No. 08 MDL No. 1963(RWS), 2009 WL 50132, at *8 (S.D.N.Y. Jan. 5, 2009)).

11

Rhode Island will fairly and adequately represent the interests of the proposed Class. Rhode Island unquestionably has resources sufficient to pursue the Action to a successful conclusion.  Rhode Island has also retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, *see infra* at Section III, and timely submitted its choice to the Court for approval, in accordance with the PSLRA.  *See* 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (B)(v).

Furthermore, no antagonism exists between Rhode Island's interests and those of the absent Class members; rather, the interests of Rhode Island and Class members are squarely aligned. Rhode Island suffered substantial losses due to Defendants' alleged misconduct and, therefore, has a sufficient interest in the outcome of this case to ensure vigorous prosecution of this action.  *See Lipetz v. Wachovia Corp.*, No. 08 Civ. 6171 (RJS), 2008 WL 4615895, at *3 (S.D.N.Y. Oct. 10, 2008) (noting investor's "substantial financial stake in the litigation" suggests that it would vigorously prosecute claims on behalf of the class).

Finally, there is no proof that Rhode Island is "subject to unique defenses that render such plaintiff incapable of representing the class," because no such proof exists.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Accordingly, Rhode Island satisfies the adequacy requirement.

### C.   As An Institutional Investor, Rhode Island Is Precisely The Type Of Lead Plaintiff Congress Envisioned When It Passed The PSLRA

In addition to satisfying the requirements of Rule 23, Rhode Island—a large, sophisticated institutional investor—is precisely the type of investor Congress sought, through the enactment of the PSLRA, to encourage to assume a more prominent role in securities litigation.  *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of

12

representation in securities class actions.").  Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation.  *See id.* at *34-35, *reprinted in* 1995 U.S.C.C.A.N. at 733-34.  To this end, many courts, including courts in this District, have recognized that the legislative history reflects a clear preference for institutional investors to be appointed as lead plaintiff in securities class actions.  *See, e.g., Reitan v. China Mobile Games & Entm't Grp., Ltd. (China Mobile)*, 68 F. Supp. 3d 390, 396 (S.D.N.Y. 2014) (collecting cases and recognizing that "many courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs"); *In re KIT Digital, Inc. Sec. Litig.*, 293 F.R.D. 441, 446 (S.D.N.Y. 2013) (noting the "statutory preference for institutional lead plaintiffs").

Rhode Island is the paradigmatic lead plaintiff as contemplated by the PSLRA.  Rhode Island's understanding of the responsibilities of a lead plaintiff is based, in part, on its experience serving as lead plaintiff in securities class actions and its demonstrated history of securing recoveries on behalf of defrauded investors, which will benefit the Class.  *See In re Coinstar Inc. Sec. Litig.*, No. 11-cv-00133 (W.D. Wash.) (recovering $6 million for the class with Labaton Sucharow serving as lead counsel).

Accordingly, Rhode Island has the sophistication and resources necessary to effectively litigate this matter and supervise Class counsel.

## III.    RHODE ISLAND'S SELECTION OF CO-LEAD COUNSEL MERITS APPROVAL

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001) (stating that "the Reform Act evidences a strong presumption in favor of

13

approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention"). Consistent with Congressional intent, a court should not disturb the lead plaintiff's choice of counsel unless it is "necessary to protect the interests of the plaintiff class." H.R. Conf. Rep. No. 104-369, at *35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 734.

Here, Rhode Island has selected the law firms of Labaton Sucharow and Bernstein Litowitz to represent the Class. Both firms have excelled as lead counsel in numerous actions on behalf of defrauded investors, including noteworthy cases in this District. For example, Labaton Sucharow served as lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-08141 (S.D.N.Y.), in which it achieved a recovery totaling more than $1 billion for injured investors; and secured a $294.9 million recovery in *In re Bear Stearns Cos., Inc. Securities, Derivative, & ERISA Litig.*, No. 08-md-01963 (S.D.N.Y.), in which the Firm served as co-lead counsel. Labaton Sucharow also served as co-lead counsel in *In re Satyam Computer Services Ltd. Sec. Litig.*, No. 09-md-02027 (S.D.N.Y.), through which it helped recover from the company and its auditors a total of $150.5 million for class members, and secured a $170 million recovery as co-lead counsel in *In re Fannie Mae 2008 Sec. Litig.*, No. 08-cv-07831 (S.D.N.Y.). Labaton Sucharow presently serves as lead or co-lead counsel in several significant investor class actions. *See* Labaton Sucharow Firm Resume, McConville Decl., Ex. D.

Likewise, Bernstein Litowitz is among the preeminent securities class action law firms in the country. Bernstein Litowitz served as lead counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-03288 (S.D.N.Y.), in which settlements totaling in excess of $6 billion— one of the largest recoveries in securities class action history—were obtained for the class. More recently, Bernstein Litowitz secured a recovery of over $2.42 billion on behalf of the class in *In*

14

*re Bank of America Corp. Securities, Derivative & ERISA Litigation*, No. 09-md-02058 (S.D.N.Y.), a $1.06 billion recovery (inclusive of attorneys' fees) for the class in *In re Merck & Co., Inc. Securities, Derivative & "ERISA" Litigation*, MDL No. 1658 (D.N.J.), and a $730 million settlement in *In re Citigroup Inc. Bond Litigation*, No. 08-cv-09522 (S.D.N.Y.), for the benefit of the class. Other examples in which courts in this District, including this Court, have recognized Bernstein Litowitz as adequate and qualified class counsel in securities class actions include:  *In re Nortel Networks Corp. Securities Litigation*, No. 05-md-01659-LAP (S.D.N.Y.) (recovering $1.07 billion for investors); *In re Wachovia Preferred Securities and Bond/Notes Litigation*, No. 09-cv-06351-RJS (S.D.N.Y) (recovering $627 million for investors); *In re Lehman Brothers Equity/Debt Securities Litigation*, No. 09-md-02017-LAK (S.D.N.Y) (recovering $615 million for investors); *In re Refco, Inc. Securities Litigation*, No. 05-cv-08626-JSR (S.D.N.Y.) (recovering $407 million for investors); and *In re HeartWare International, Inc. Securities Litigation*, No. 16-cv-00520-RA (S.D.N.Y.) (Abrams, J.) (recovering $54.5 million). *See* Bernstein Litowitz Firm Resume, McConville Decl., Ex. E.

Furthermore, not only are Labaton Sucharow and Bernstein Litowitz each well-qualified and experienced law firms in their own right, but they have a successful track record of working together cooperatively as co-lead counsel. For example, Labaton Sucharow and Bernstein Litowitz served as co-lead counsel in several cases: *In re Schering-Plough Corp./ENHANCE Securities Litigation*, No. 08-cv-00397 (D.N.J.), in which they achieved a recovery of $473 million for the class; *In re Facebook, Inc. IPO Securities and Derivative Litigation*, No. 12-md-02389 (S.D.N.Y.), which recovered $35 million for investors; and *In re Virtus Investment Partners Inc. Securities Litigation*, No. 15-cv-01249 (S.D.N.Y.), in which investors obtained a $22 million recovery.

15

In light of the foregoing, the Court should approve Rhode Island's selection of Labaton Sucharow and Bernstein Litowitz as Co-Lead Counsel for the Class.  The Court can be assured that, by approving Rhode Island's choice of counsel, the Class will receive the highest caliber of representation.

## CONCLUSION

For the foregoing reasons, Rhode Island respectfully requests that the Court grant its motion and enter an Order: (i) consolidating the above-captioned actions; (ii) appointing Rhode Island as Lead Plaintiff; (iii) approving Rhode Island's selection of Labaton Sucharow and Bernstein Litowitz as Co-Lead Counsel for the Class; and (iv) granting such other and further relief as the Court may deem just and proper.

DATED:  August 26, 2019

Respectfully submitted,

*/s/ Francis P. McConville*

**LABATON SUCHAROW LLP**
Christopher J. Keller
Eric J. Belfi
Francis P. McConville
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile:  (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
fmcconville@labaton.com

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Gerald H. Silk
Michael D. Blatchley
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile:  (212) 554-1444
jerry@blbglaw.com
michaelb@blbglaw.com

*Counsel for the Proposed Lead Plaintiff
Employees' Retirement System of the State
of Rhode Island and Proposed Co-Lead
Counsel for the Class*