# Exhibit 3

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

---

# FORM 8-K

---

## CURRENT REPORT

**Pursuant to Section 13 or 15(d) of
the Securities Exchange Act of 1934**

**Date of Report (Date of earliest event reported): April 6, 2015**

---

# FEDEX CORPORATION
**(Exact name of registrant as specified in its charter)**

---

**Commission File Number 1-15829**

| | |
|---|---|
| **Delaware** | **62-1721435** |
| **(State or other jurisdiction of incorporation)** | **(IRS Employer Identification No.)** |
| **942 South Shady Grove Road, Memphis, Tennessee** | **38120** |
| **(Address of principal executive offices)** | **(ZIP Code)** |

**Registrant's telephone number, including area code: (901) 818-7500**

---

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☐ Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐ Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐ Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐ Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

## SECTION 1. REGISTRANT'S BUSINESS AND OPERATIONS

**Item 1.01.   Entry into a Material Definitive Agreement.**

*Merger Protocol*

On April 6, 2015, FedEx Corporation ("FedEx") and TNT Express N.V. ("TNT Express") entered into a conditional agreement (the "Merger Protocol") on a recommended all-cash offer for all issued and outstanding ordinary shares, including shares represented by American Depositary Receipts, (the "Shares") of TNT Express (the "Offer"), for a cash offer price of €8.00 per share cum dividend except for the TNT Express final 2014 dividend of €0.08 per share (the "Offer Price"). The transaction values TNT Express at an implied equity value of approximately €4.4 billion ($4.8 billion). FedEx intends to finance the Offer through available cash resources and existing and new debt arrangements. The proposed transaction will have no financing contingencies. FedEx will make a timely certain funds announcement as required by Section 7 Paragraph 4 of the Dutch Decree on Public Takeover Bids.

The Executive Board and Supervisory Board of TNT Express (the "Boards") believe the Offer to be in the best interest of TNT Express and its stakeholders, including its shareholders, and have unanimously approved the terms of the Merger Protocol. Subject to the terms of the Merger Protocol, the Boards intend to fully and unanimously support and recommend the Offer for acceptance to TNT Express's shareholders, and vote in favor of the resolutions at the extraordinary general meeting (the "EGM").

FedEx's willingness to pay the Offer Price is predicated on the acquisition of 100% of the Shares. If FedEx acquires 95% or more of the Shares, FedEx will delist TNT Express from Euronext Amsterdam promptly and initiate statutory squeeze-out proceedings to obtain 100% of the Shares. If FedEx acquires less than 95% but at least 80% of the Shares, FedEx intends to acquire the entire business of TNT Express at the same price as the Offer Price pursuant to an asset sale, combined with a liquidation of TNT Express, to deliver such consideration to the remaining TNT Express shareholders (the "Asset Sale and Liquidation"). The Asset Sale and Liquidation is subject to approval by TNT Express's shareholders at the EGM. Subject to the terms of the Merger Protocol, the Boards have agreed to unanimously recommend to the shareholders to vote in favor of the Asset Sale and Liquidation.

FedEx and TNT Express each made customary representations, warranties and covenants in the Merger Protocol, including, certain non-financial covenants with regard to strategy, governance, employees, integration, the TNT Express brand and retention matters.

Under the terms of the Merger Protocol, commencement of the Offer is subject to certain customary pre-offer conditions, including: (i) no material adverse effect having occurred and is continuing; (ii) no material breach of the Merger Protocol having occurred; (iii) receiving Dutch regulatory approval of the offer memorandum; (iv) no revocation or amendment of the recommendation by the Boards; (v) no Superior Offer (as defined below) agreed upon or launched; (vi) no third party being obliged and has announced to make, or has made a mandatory offer equal to the Offer Price having been made pursuant to Dutch law, or in connection with which no preference shares in the capital of TNT Express are outstanding; (vii) no issuance of an order, stay, injunction, judgment or decree prohibiting the consummation of the transaction; (viii) no notification that the Offer breaches Dutch offer rules; (ix) no trading suspension of the Shares as a result of a listing measure; and (x) the Stichting Continuïteit TNT Express (the "Foundation") not having exercised its call option to have TNT Express preference shares issued unless certain conditions are met.

The Merger Protocol further provides that the consummation of the Offer will be subject to certain offer conditions, including: (i) minimum acceptance level of at least 95% of the Shares, which will

2

be reduced to 80% if the Asset Sale and Liquidation is approved and certain conditions are satisfied, provided that FedEx may waive the minimum acceptance level if it is 65% or more; (ii) the EU and certain other key competition clearances having been obtained; (iii) no material adverse effect having occurred; (iv) no material breach of the Merger Protocol having occurred; (v) no revocation or amendment of the recommendations by the Boards; (vi) no Superior Offer (as defined below) agreed upon or launched; (vii) no third party being obliged and has announced to make, or has made a mandatory offer equal to the Offer Price having been made pursuant to Dutch law, or in connection with which no preference shares in the capital of TNT Express are outstanding; (viii) no issuance of a governmental or court order prohibiting the consummation of the transaction; (ix) no notification that the Offer breaches Dutch offer rules; (x) no trading suspension in the Shares as a result of a listing measure; and (xi) the Foundation not having exercised its call option to have preference shares in the capital of TNT Express issued unless certain conditions are met.

The Merger Protocol contains certain termination rights for FedEx and TNT Express. Upon termination of the Merger Protocol by FedEx on account of a material breach of the Merger Protocol by TNT Express or in the event that a bona fide third-party offeror makes an offer which is binding upon such party per the terms of the Merger Protocol (a "Superior Offer"), TNT Express will pay FedEx a €45 million termination fee. A Superior Offer must be (i) considered by the Boards to be substantially more beneficial to TNT Express than the Offer, (ii) exceed the Offer Price by at least 8% and (iii) launched or committed to be launched within eight weeks.

In the event of a Superior Offer, FedEx will be given the opportunity to match such offer, in which case the Merger Protocol may not be terminated by TNT Express. TNT Express has undertaken not to solicit third party offers.

The Merger Protocol also provides that FedEx will be required to pay TNT Express a reverse termination fee of €200 million in the event of (i) a material breach of the Merger Protocol by FedEx; (ii) the EU and certain other key competition clearances not having been obtained; or (iii) FedEx's failure to commence or pursue the Offer despite all conditions having been satisfied or waived. The termination fees are without prejudice to each party's rights under the Merger Protocol to demand specific performance.

The foregoing description of the Merger Protocol is qualified in its entirety by reference to the full text of the Merger Protocol, which is attached hereto as Exhibit 2.1.

A copy of the Merger Protocol has been included as an exhibit to this Current Report on Form 8-K to provide investors with information regarding its terms. It is not intended to provide any other factual information about FedEx, TNT Express or any of their respective subsidiaries or affiliates. The representations, warranties and covenants contained in the Merger Protocol were made only for purposes of that agreement and as of specific dates; were made solely for the benefit of the parties to the Merger Protocol; may be subject to limitations agreed upon by the contracting parties, including being qualified by confidential disclosures; may not have been intended to be statements of fact, but rather, as a method of allocating contractual risk and governing the contractual rights and relationships between the parties to the Merger Protocol; and may be subject to standards of materiality applicable to contracting parties that differ from those applicable to investors. Investors should not rely on the representations, warranties and covenants or any descriptions thereof as characterizations of the actual state of facts or condition of FedEx, TNT Express or any of their respective subsidiaries or affiliates. Moreover, information concerning the subject matter of the representations, warranties and covenants may change after the date of the Merger Protocol, which subsequent information may or may not be fully reflected in FedEx's or TNT Express's public disclosures.

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

**FedEx Corporation**

Date: April 9, 2015

By: /s/ Christine P. Richards

Christine P. Richards
Executive Vice President,
General Counsel and Secretary

6